1 | GASTON KROUB (*admitted pro hac vice*)
2 | gkroub@kskiplaw.com
  | ZOE AXELROD CATES (*admitted pro hac vice*)
3 | KROUB, SILBERSHER & KOLMYKOV, PLLC
4 | 305 Broadway, 7th Floor
  | New York, NY 10007
5 | Telephone: (212) 323-7442
6 |
  | MATTHEW L. SEROR (SBN: 235043)
7 | mseror@buchalter.com
8 | BUCHALTER NEMER
  | A Professional Corporation
9 | 1000 Wilshire Boulevard, Suite 1500
10 | Los Angeles, CA 90017-2457
  | Telephone: (213) 891-0700
11 | Fax: (213) 896-0400
12 |
  | Attorneys for Defendants and Cross-Complainants
13 | STYLES FOR LESS, INC. and PPI APPAREL GROUP, INC.
14 |

15 | **UNITED STATES DISTRICT COURT**
  | **CENTRAL DISTRICT OF CALIFORNIA**
16 |

| 17 | BRAGEL INTERNATIONAL, INC., a California corporation, | Case No. 8:15-cv-01756-R (FFMx) |
|---|---|---|
| 18 | Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION FOR SUMMARY JUDGMENT;** |
| 19 | vs. | **SUMMARY JUDGMENT; MEMORANDUM OF POINTS AND** |
| 20 | STYLES FOR LESS, INC., *et al.*, | **AUTHORITIES IN SUPPORT THEREOF** |
| 21 | Defendants. | **REDACTED VERSION** |
| 22 | | Hearing Information: |
| 23 | AND RELATED COUNTERCLAIMS | Date: September 6, 2016 |
| 24 | | Time: 10:00 a.m. Place: Courtroom 8 |
| 25 | | Discovery Cutoff: August 19, 2016 |
| 26 | | Pretrial Conf.: September 5, 2016 Trial Date: October 11, 2016 |
| 27 | | |

28 |

## TABLE OF CONTENTS

**PAGE**

I. INTRODUCTION ........................................................................................... 1

II. FACTS ........................................................................................................... 1

    A. The Parties ............................................................................................ 1

    B. Plaintiff's Patent .................................................................................. 2

    C. The Accused Products .......................................................................... 2

    D. Plaintiff's Litigation History with the Defendants ............................. 3

III. LEGAL ARGUMENT .................................................................................. 5

    A. Legal Standard Governing Motions for Summary Judgment ............... 5

    B. Plaintiff's Claims Are Barred By Equitable Estoppel .......................... 5

        1. Law on Equitable Estoppel of Claims of Patent Infringement ... 6

        2. Plaintiff Misleadingly Led Defendants to Reasonably Believe it Did Not Intend to Enforce Its Patents Against Them. ........................................................................................... 6

        3. Defendants Will Be Materially Prejudiced If Plaintiff Is Not Estopped Because PPI Expanded Sales and Added New Product Lines. .......................................................................... 10

        4. Plaintiff's Claims Are Estopped Against All Defendants. ........ 12

    C. Plaintiff's Past Damages Are Barred By The Doctrine of Laches ..... 12

        1. The Law Of the Doctrine of Laches .......................................... 12

        2. Plaintiff's Delay In Bringing Suit Was Unreasonable and Inexcusable ................................................................................ 13

        3. PPI Will Suffer Material Prejudice Because of Plaintiff's Delay .......................................................................................... 14

    D. The '296 Patent Is Invalid Under 35 U.S.C. §103 .............................. 14

        1. The Law of Invalidity Under 35 U.S.C. §103 .......................... 14

        2. The Scope and Content of the Prior Art .................................... 15

        3. Non-Patent Prior Art References ............................................... 17

1

## TABLE OF CONTENTS (cont.)

**PAGE**

2

3    4.    The Differences Between The Prior Art and The Claims At Issue ........................................................................................ 17

4

5    5.    Resolving the Level of Ordinary Skill in the Pertinent Art...... 19

6    6.    Secondary Considerations of Non-Obviousness ...................... 20

7    7.    Each Asserted Claim of The '296 Patent is Invalid As Obvious Under 35 U.S.C. §103 .................................................. 21

8    8.    The '296 Patent Is Invalid Under 35 U.S.C. §102(f) ............... 22

9   IV.   CONCLUSION ............................................................................................. 23

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

**PAGE**

2

**Cases**

3

*A.C. Aukerman Co. v. R.L. Chaides Construction Co.*,
4   960 F.2d 1020 (Fed. Cir. 1992)......................................................................................*passim*

5   *Aspex Eyewear, Inc. v. Clariti Eyewar, Inc.*,
    605 F.3d 1305 (Fed. Cir. 2010)....................................................................6, 7, 8, 10
6

*Burroughs Wellcome v. Barr Labs., Inc.*
7   40 F. 3d 1223 (Fed. Cir. 1994)...............................................................................22

8   *Cable Elec. Prods. v. Genmark, Inc.*,
    770 F.2d 1015 (Fed. Cir. 1985)...............................................................................21
9

*Celotex v. Catrett*,
10   477 U.S. 317 (1986)..................................................................................................5

11   *Graham v. John Deere Co.*,
     383 U.S. 1 (1966).............................................................................................15, 20
12

*High Point Sarl v. Sprint Nextel Corp.*,
13   No. 2015-1298 (Fed. Cir. Apr. 5, 2016) ..............................................................12

14   *In re GPAC, Inc.*,
     57 F.3d 1573 (Fed. Cir. 1995)................................................................................21
15

*KSR International Co. v. Teleflex Inc.*,
16   550 U.S. 398 (2006)................................................................................................15

17   *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*,
     475 U.S. 574 (1986)..................................................................................................5
18

*Petrella v. MetroGoldwyn-Mayer, Inc.*,
19   134 S. Ct. 1962 (2014)...........................................................................................13

20   *Pro-Mold Tool Co. v. Great Lakes Plastics*,
     75 F. 3d 1568 (Fed. Cir. 1996)................................................................................22
21

*Quanta Computer, Inc. v. LG Electronics, Inc.*,
22   553 U.S. 617 (2008)................................................................................................12

23   *Radio Systems Corp. v. Lalor*,
     709 F.3d 1124 (Fed. Cir. 2013).................................................................................6
24

*SCA Hygiene Prods. Aktiebolag v. First Quality Baby Prods., LLC*,
25   807 F.3d 1311 (Fed. Cir. 2015)..........................................................................12, 13

26   *Scholle Corp. v. Blackhawk Molding Co.*,
     133 F.3d 1469 (Fed. Cir. 1998)......................................................................6, 9, 10
27

28

**TABLE OF AUTHORITIES (cont.)**

**PAGE**

*Wafer Shave, Inc. v. Gillette Co.,*
857 F.Supp. 112 (D.Mass. 1993), aff'd, 26 F.3d 140 (Fed. Cir. 1994) ............. 7, 10

*Wang Lab. v. Mitsubishi Elecs. Am.,*
860 F. Supp. 1448 (C.D. Cal. 1993) .......................................................................... 5

*Wanlass v. Gen. Elec. Co.,*
148 F.3d 1334 (Fed. Cir. 1998) ............................................................................. 13

**Statutes**

35 U.S.C. §102(f) ................................................................................................... 22

35 U.S.C. §103 ................................................................................................ *passim*

35 U.S.C. §103(a) ................................................................................................. 15

**Rules**

Fed.R.Civ.P. 56(a) ................................................................................................... 5

BN 21426321V1                                                iv

**MOTION FOR SUMMARY JUDGMENT**                    Case No. 8:15-cv-01756-R (FFMx)

1

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

2       **PLEASE TAKE NOTICE** that on September 6, 2016 at 10:00 a.m. or as

3 soon thereafter as counsel may be heard, before the Honorable Manuel L. Real,

4 Judge presiding in Courtroom 8 of the United States District Court located at 312

5 North Spring Street, Los Angeles, California, 90012, Defendants PPI Group

6 Apparel, Inc. and Styles for Less, Inc. (collectively referred to as "Defendants")

7 will, and hereby do, move this Court for summary judgment pursuant to Federal

8 Rules of Civil Procedure Rule 56 and Local Rules 56-1 and 56-3 on all claims

9 brought against them by Plaintiff Bragel International, Inc. ("Plaintiff"), as follows:

10       **Issue No. 1:** Plaintiff's patent infringement claim fails because it is barred by

11       the doctrine of equitable estoppel.

12       **Issue No. 2:** Plaintiff's claim for pre-suit damages is barred by the doctrine

13       of laches.

14       **Issue No. 3:** Plaintiff's patent infringement claim fails because its patent is

15       invalid.

16       Alternatively, in the event summary judgment in favor of Defendants is not

17 granted as requested, Defendants will, and hereby do, move for partial summary

18 judgment on each and every issue set forth above.

19 ///

20 ///

21 ///

22 ///

23 ///

24 ///

25 ///

26 ///

27 ///

28 ///

This Motion is based on this Notice of Motion, the attached Memorandum of Points and Authorities, concurrently filed Declarations of Gaston Kroub, Abe Hanan, Karin Yngvesdotter, the documents, exhibits and other evidence accompanying this motion, the Separate Statement of Uncontroverted Facts and Conclusions of Law, all other pleadings on file in this action and such matters as may be presented in reply papers and oral argument at the time of the hearing.

DATED: August 9, 2016                    BUCHALTER NEMER

                                          A Professional Corporation

                              By: _____ /s/ Matthew L. Seror

                                          MATTHEW L. SEROR
                                          Attorneys for Defendants and
                                          Cross-Complainants
                                          STYLES FOR LESS, INC. and
                                          PPI APPAREL GROUP, INC.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Despite being a serial litigant, Plaintiff Bragel International, Inc. ("Bragel") waited too long to bring its claims for patent infringement against PPI Apparel Group ("PPI"). Worse, Bragel misled PPI into believing that it would never do so, only to turn around years later and bring suit. Bragel first complained about PPI's alleged infringement in 2010, but then inexplicably broke off contact and sat on its hands until naming PPI as a Defendant in this action in 2016. PPI was misled by Bragel's actions and inaction into believing that Bragel was not going to assert its patents against PPI. PPI relied on Bragel's misrepresentations to continue selling, and even expand sales between 2010-2016. As a result of the delay, PPI has suffered evidentiary and economic prejudice. The uncontroverted facts give rise to PPI's defenses of equitable estoppel and laches. If the Court agrees that summary judgment is warranted, this case is over.

Bragel's asserted patent is also invalid for two reasons. First, the asserted claims of Bragel's patent are obvious. Second, Bragel's own admissions during discovery confirm that the patent is invalid for failing to properly name the correct inventors. Here again, if the Court agrees that the patent is invalid for either of these reasons, this case is over.

## II. FACTS

### A. The Parties

Defendant PPI is a family-owned business that was founded in 1995 under the corporate name Panties Plus, Inc. ("Panties Plus). (Declaration of Abe Hanan ["Hanan Decl."] ¶3). Since at least June 11, 2013, Panties Plus was publicly doing business as "PPI Apparel Group." (*Id.* at ¶4). There is no separate corporation known as PPI Apparel Group, Inc., as the only corporate owner of PPI remains and has always been Panties Plus. (*Id.*). PPI imports a wide-range of apparel and accessories, with a focus on intimate apparel. (*Id.* at ¶5). PPI sells to retailers

1 nationwide, including to the other named Defendant, Styles For Less, Inc.

2 ("Styles"). (*Id.* at ¶6). PPI has never sold products directly to consumers, either

3 through its website or its own retail channels. (*Id.* at ¶7). It has sold the accused

4 products to many retailers domestically and internationally since 2010. (*Id.* ¶8_Ex.

5 NN). PPI is indemnifying its customer Styles in full in this lawsuit. (Hanan Decl.

6 ¶9, Kroub Decl. Ex. G).

7 Plaintiff Bragel's Complaint (D.E. 1) states that it "is presently engaged in

8 the design and distribution of strapless bras and attachable breast forms". (Kroub

9 Decl. Ex. M at ¶6). Since 2011, Plaintiff has asserted the patent-in-suit in at least

10 five additional cases in this District enforcing its patents. (Kroub Decl. Ex. S).

11 **B.** **Plaintiff's Patent**

12 Bragel has asserted claims 1, 2 and 5 of U.S. Patent No. 7,144,296 B2 ("the

13 '296 Patent"). (Kroub Decl. Ex. N at ¶10). The '296 Patent issued on December 5,

14 2006 and is a continuation of two prior issued Bragel patents, U.S. Patent Nos.

15 6,852,001 and 6,758,720. Claim 1 of the '296 Patent is an independent claim, and

16 claims 2 and 5 both depend from claim 1.

17 **C.** **The Accused Products**

18 Bragel has accused two products, the "Oh Baby.....Strapless, Backless, Self-

19 Adhesive Silicone Bra" (hereinafter, "Oh Baby") and the "Silicone Fashion Bra" of

20 infringement (collectively, the "Accused Products"). (Kroub Decl. Ex. N at ¶10).

21 PPI categorizes the accused products under three style nos.: ACC002, ACC100 and

22 ACC101. (Hanan Decl. ¶10; Kroub Decl. Ex. T). Plaintiff has accused each style of

23 infringement, and any differences between them are cosmetic and not relevant to

24 the infringement claims. (Kroub Decl. Ex. X, Hanan Depo. Tr. at 23:6-15; 25:1-11;

25 26:12-24; 28:2-9; 29:6-30). PPI has sold ACC002 continuously since November

26 2009. (Hanan Decl. ¶11 Ex. KK).

27

28

**D.     Plaintiff's Litigation History with the Defendants**

On August 27, 2010, Plaintiff wrote to PPI alleging willful patent infringement. (Kroub Decl., Ex. A). The letter was addressed to Panties Plus, but since at least June 11, 2013, Panties Plus has publicly done business as "PPI Apparel Group." (Hanan Decl. ¶4; Kroub Decl. Ex. B).

Bragels's letter demanded that PPI cease and desist from willfully infringing Plaintiff's patents by virtue of its sale of backless, strapless, silicone adhesive bras under the brand name, "Lady Princess." (Kroub Decl. Ex. A). The "Lady Princess" bras corresponded to PPI style no. ACC02, which are still being sold today under the "Lady Princess" brand name as the accused "Oh Baby" bras. (Hanan Decl. ¶12 Ex. LL).

. (Kroub Decl. Ex. W; Chen Depo Tr. at 14: 5-11; 87: 23-25).

Plaintiff's letter referred PPI to Bragel's website (www.Bragel.com) for a list of Bragel's asserted patents, stating, "you can get all the related patent information by visiting the website www.Bragel.com." (Kroub Decl. Ex. A). As of August 18, 2010 and October 22, 2010—i.e., both before and after Bragel's letter—the '296 Patent was listed on www.Bragel.com. (Kroub Decl. Ex. C; *see also* Kroub Decl. Ex. W, Chen Depo. Tr. at 207: 1-14).

Despite its threat, Plaintiff never followed through. Plaintiff *admits* that it silently walked away even though PPI never stopped selling infringing products to over a dozen other retailers in 2010 alone, much less between 2010 and 2016. (Kroub Decl. Ex. D at p. 15, Response to Interrogatory No. 8). While the passage of time has understandably dulled his memory of events, PPI's corporate witness recalled doing two things in response to the 2010 letter: 1) seeking the assistance of counsel in evaluating the merits of Bragel's claims and patents, and 2) communicating a belief to Bragel's attorney at the time that the patents were not

infringed and invalid. (Kroub Decl. Ex. X, Hanan Depo Tr. at 38:2-8; 49: 7-12;

57:15-25; 58:1-25). Bragel deliberately chose to walk away.

More than four years later after first contacting PPI, on September 22, 2014, Plaintiff wrote to defendant Charlotte Russe, Inc. ("Charlotte Russe"). (Kroub Decl. Ex. E). Plaintiff alleged that the Accused Products infringe the '296 Patent. (*Id.*). Plaintiff suggested that even if Charlotte Russe ceases all sales of the products, litigation could nevertheless ensue. (*Id.*).

Before receiving a response to its letter dated September 22, 2014, Plaintiff filed suit against Charlotte Russe on October 3, 2014. (Kroub Decl. Ex. F). The complaint asserted the '296 Patent against the same Accused Products currently accused in this case. (*Id.* Ex. F at ¶8). Three days later, on October 6, 2014, counsel for PPI informed Plaintiff's counsel that PPI would be indemnifying Charlotte Russe. (*Id.* Ex. G). After that, the parties exchanged letters regarding the case. (*Id.* Exs. H, I). Yet, Plaintiff never pursued the case. Importantly, Plaintiff never served the complaint. (*Id.* Ex. J). On February 4, 2015, the Court issued an ORDER TO SHOW CAUSE RE DISMISSAL FOR LACK OF PROSECUTION. (*Id.* Ex. K). Two days later, on February 6, 2015, Plaintiff voluntarily dismissed the complaint. (*Id.* Ex. L).

Once again, Plaintiff *admits* that it simply walked away from the case for no justifiable reason other than its own convenience. Plaintiff had simultaneously sued another retailer, June Tailor, but "believed it was in its best interest to focus on a single time-intensive litigation case at a time." (Kroub Decl. Ex. D, Response to Interrogatory No. 12, 2:15-cv-08364; *see also* Kroub Decl., Ex. W, Chen Depo Tr. at 224: 6-25 (

.)). In fact, only after Plaintiff settled its case against June Tailor in August 2015 did Plaintiff reassert infringement against Charlotte Russe, (*Id.*) despite

knowing that PPI was supplying Charlotte Russe with the Accused Products. (*Id.*

Ex. G).

On October 26, 2015, Plaintiff commenced suit against Charlotte Russe *only*. (Kroub Decl. Ex. M). Plaintiff once again asserted the same patent (the '296 Patent) and accused the same Accused Products previously accused in the October 3, 2014 lawsuit. (*Id.*). Several months later, on January 26, 2016, Plaintiff amended the complaint to add PPI as a defendant. (Kroub Decl. Ex. N).

On October 28, 2015, Plaintiff commenced suit against defendant Styles-For-Less *only*. (Kroub Decl. Ex. O). On March 2, 2016, Plaintiff amended the complaint to add PPI to the suit and to accuse the same Accused Products previously accused against Charlotte Russe and PPI. (Kroub Decl. Ex. P).[1]

Additional facts relevant to Defendants' arguments herein are discussed below.

## III. **LEGAL ARGUMENT**

### A. **Legal Standard Governing Motions for Summary Judgment**

Summary judgment is proper where the admissible evidence shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex v. Catrett*, 477 U.S. 317, 322-323 (1986). "The moving party has the burden of demonstrating the absence of a genuine issue of fact for trial." *Wang Lab. v. Mitsubishi Elecs. Am.*, 860 F. Supp. 1448, 1451 (C.D. Cal. 1993). The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Electrical Industry Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

### B. **Plaintiff's Claims Are Barred By Equitable Estoppel**

[1] The Amended Complaint in the case against Styles-For-Less also included allegations against different products distributed by a different defendant, Gina Group LLC. (Kroub Decl. Ex. P). On April 8, 2016, Plaintiff dismissed Gina Group as well as its allegations against any products other than the Accused Products. (*Id.* Ex. Q).

**1.      Law on Equitable Estoppel of Claims of Patent Infringement**

Equitable estoppel acts as a complete bar to a patentee's infringement claim. *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1041 (Fed. Cir. 1992). To establish equitable estoppel, a plaintiff must establish each of the factors by a preponderance of the evidence. *Id.* at 1046. In the context of patent infringement, the three elements of equitable estoppel that must be established are: 1) the patentee, through misleading conduct, led the alleged infringer to reasonably believe that the patentee did not intend to enforce its patent against the infringer; 2) the alleged infringer relied on that conduct; and 3) due to its reliance, the alleged infringer would be materially prejudiced if the patentee were permitted to proceed with its charge of infringement. *Aukerman,* 960 F.2d at 1028. A patentee's silence and inaction can be misleading in the context of the specific interaction between the parties. *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469 (Fed. Cir. 1998) (equitable estoppel existed after three years of silence); *Aspex Eyewear, Inc. v. Clariti Eyewar, Inc*., 605 F.3d 1305 (Fed. Cir. 2010)(three years); *Radio Systems Corp. v. Lalor*, 709 F.3d 1124 (Fed. Cir. 2013)(five years).

**2.      Plaintiff Misleadingly Led Defendants to Reasonably Believe It Did Not Intend to Enforce Its Patents Against Them.**

Estoppel exists when "the patentee specifically objects to the activities currently asserted as infringement in the suit and then does not follow up for years." *A.C. Aukerman Co. v. R.L. Chaides Construction Co.*, 960 F.2d 1020, 1042 (Fed. Cir. 1992). This is such a case. The present suit was commenced more than five years from the date of Plaintiff's original threat of infringement.

First, Plaintiff threatened suit in 2010 but never followed through. As discussed in more detail in Sec. II.D, in August 2010, Plaintiff accused PPI of willful patent infringement by its "Lady Princess" branded product. That product corresponds to one of the accused products in this case. (*See supra* p. 9). Despite its threatening letter, Plaintiff never filed suit. Plaintiff engaged in "misleading

conduct" that led PPI to "reasonably believe that [Plaintiff] did not intend to enforce its patent[s] against [PPI.]" *Aspex Eyewear*, 960 F.2d at 1310. Here, Plaintiff's "misleading conduct" was its inaction and silence, i.e., sending a letter threatening a lawsuit, but not commencing one. *Id.* ("Misleading 'conduct' may include specific statements, action, inaction, or silence when there was an obligation to speak.").

Plaintiff's letter accused the *same products* accused in this suit. Plaintiff's letter accused the "Lady Princess," which is the same product as the Accused Products in this case, corresponding to style no. ACC002. (Hanan Decl. ¶15). Yet, even if Plaintiff had not identified *any* product in its 2010 letter, Plaintiff is still equitably estopped because it unequivocally threatened immediate suit for infringement. *See Aspex Eyewear*, 605 F.3d at 1311-1312 (rejecting patent-holder's argument that "misleading silence cannot be found unless an express charge of infringement was levied against a particular product").

Plaintiff's letter also asserted the *same patent* asserted in this suit. Plaintiff's letter stated "you can get all the related patent information by visiting the website www.Bragel.com." (Kroub Decl. Ex. A). Bragel's website (www.Bragel.com) on August 18, 2010 and October 22, 2010—i.e., both before and after Bragel's letter—expressly lists the '296 Patent alongside the other patents specifically identified in Bragel's letter. (Kroub Decl. Ex. C).

Accordingly, the first element is satisfied because Plaintiff threatened prompt and vigorous enforcement of its patents. Plaintiff expressly told Panties Plus (now PPI) to "[i]mmediately" "cease and desist your acts of infringement". (Kroub Decl. Ex. A). Courts have held that immediate cease and desist demands equate to a threat of prompt and vigorous enforcement of its patents. *See Wafer Shave, Inc. v. Gillette Co.,* 857 F.Supp. 112, 119 (D.Mass. 1993), aff'd, 26 F.3d 140 (Fed. Cir. 1994).

Plaintiff's August 2010 letter "can fairly be understood as threats of suit for

1  infringement." *See Aspex Eyewear*, 605 F.3d at 1310-11. In *Aspex Eyewear*, the
2  patent-holder stated its "understanding that some of the products sold by
3  [defendant] may be covered by the claims of the above mentioned patents," and it
4  also stated its "strong intention to fully and vigorously enforce our rights" in this
5  "very urgent and serious matter." (*Id.*). Here, Plaintiff's 2010 letter stated it
6  "considers [PPI's] conduct to be an infringement of [Plaintiff's] rights," that would
7  expose Plaintiff to, *inter alia*, "very serious liabilities," "compensatory damage,"
8  "damages under the patent laws," "substantial punitive damages," and "attorneys
9  fees and court costs if our client has to bring legal action against you." (Kroub Decl.
10 Ex. A). This was not simply an offer to license its patents—it was a threat of
11 immediate and vigorous enforcement of purported patent rights.
12 . (Kroub Decl. Ex. W;
13 Chen Depo. Tr. at 201: 17-25; 202: 1-21; 204: 7-17; 205: 4-8).

14     Plaintiff's excuses for not filing suit in 2010 are false. Plaintiff claims the
15 "Lady Princess" was removed from Panties Plus' website after Plaintiff's August
16 2010 letter. (Kroub Decl. Ex. D at p. 15). Yet, prior to August 2010, PPI had not
17 advertised or placed the "Lady Princess" for sale or marketing on its website.
18 (Hanan Decl. ¶14). In fact, Plaintiff's August 27, 2010 letter does not suggest or
19 indicate that Plaintiff learned of the "Lady Princess" through PPI's website. (Kroub
20 Decl. Ex. A).
21
22 . (Kroub Decl. Ex.
23 W; Chen Depo Tr. at 15: 13-25; 201: 17-19).
24 . (*Id.*;
25 Chen Depo. Tr. at 212: 14-17). :
26
27
28

BUCHALTER NEMER



4 | (*Id.*; Chen Depo Tr. at 212: 12-23).

10 | ." (*Id.*; Chen Depo.

11 | Tr. at 217: 21-24).

14 | (*Id.*; Chen Depo. Tr. at 218: 7-22).

16 | . (*Id.* Chen Depo. Tr. at 219: 4-14).

Four years later, Plaintiff sued Charlotte Russe in October 2014, but within months voluntarily dropped the suit. (*See supra* Sec. II.D). As discussed above, that suit specifically accused the *same products* accused in this suit and asserted the *same patent*. (*Id.*). Again, Plaintiff's excuses for dropping suit are unavailing. Plaintiff cannot avoid being estopped because it was engaged in "other litigation" against June Tailor. *Scholle Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1472-73 (Fed.Cir.1998) (holding pending litigation against another party "was not cause for [patent-holder] to be excused from the delay").

Plaintiff's "other litigation" excuse is unavailing because Plaintiff never notified the Defendants of its case against June Tailor, and never notified Defendants that its purported reason for delaying suit was because of the June Tailor case. In fact, Plaintiff did quite the opposite—it *voluntarily walked away*

1  from its suit against Charlotte Russe while its case against June Tailor was pending
2  without giving any reason for the dismissal. (*See supra* Sec. II.D). *See Scholle*
3  *Corp. v. Blackhawk Molding Co.*, 133 F.3d 1469, 1472 (Fed. Cir. 1998)("when the
4  course of dealings between a patentee and an alleged infringer is such that the
5  alleged infringer reasonably infers from the patentee's misleading conduct or
6  inaction that the patentee has waived its patent rights, then the first element of
7  equitable estoppel has been established absent a statement to the contrary by the
8  patentee."); *Wafer Shave,* 857 F. Supp. at 121 (it is "immaterial to the issue of
9  estoppel that there were reasons for the delay in filing suit, since those reasons were
10 not communicated to Gillette or otherwise known by it"). The fact that only six
11 months transpired between Plaintiff dropping the 2014 suit and commencing the
12 2015 suit is immaterial, especially in light of the inaction following the 2010 letter.
13 *Any delay* can warrant estoppel of plaintiff's infringement claims if the defendant
14 reasonably inferred that a plaintiff had abandoned its claims. *See Aukerman*, 960
15 F.2d at 1041-42 ("equitable estoppel does not require the passage of an
16 unreasonable period of time in filing suit").

**3.**  **Defendants Will Be Materially Prejudiced If Plaintiff Is Not Estopped Because PPI Expanded Sales and Added New Product Lines.**

19 A defendant "need not show a total loss of value in order to show material
20 prejudice. Prejudice may be shown by a change of economic position flowing from
21 actions taken or not taken by the patentee." *Aspex Eyewear*, 605 F.3d at 1312.
22 Defendants reasonably relied on Plaintiff's misleading conduct to its detriment.
23 During the period of delay PPI expanded unit sales and revenue of the Accused
24 Products, and PPI launched new products, now accused of infringement. Exhibit
25 MM shows PPI's revenues to date from yet another styles, ACC100, which was
26 introduced in 2015. (Hanan Decl. ¶16 Ex. MM).

27
28

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18



19  Plaintiff claims that after suing Charlotte Russe in 2014, it subsequently
20  dismissed the suit because Plaintiff "Bragel believed Charlotte Russe was only
21  making a small amount of sales." (Kroub Decl. Ex. D at p. 25, Response to
22  Interrogatory No. 12, 2:15-cv-08364). Plaintiff also claimed that a few months later,
23  around August 2015, Plaintiff "learned that Charlotte Russe was selling a large
24  number of infringing products, including large purchase orders." (Id.). There is no
25  evidence to support these excuses. PPI was continuously selling the same style
26  accused in 2010, and expanded its product line both before and after the 2014
27  lawsuit was filed and dropped, just as it did when Bragel did not file suit based on
28

1 its 2010 letter. In addition to the potential economic prejudice, the passage of time
2 has also caused PPI evidentiary prejudice, as evidenced at least by PPI's corporate
3 witness' inability to recall details from his conversation with Bragel's attorney in
4 2010. (Kroub Decl. Ex. X; Hanan Depo. Tr. at 58: 6-25; 59: 1-25).

**4.  Plaintiff's Claims Are Estopped Against All Defendants.**

6 To the extent that Plaintiff's claims are equitably estopped against PPI, that
7 acts as a defense to Plaintiff's claims against all Defendants, including PPI and
8 Styles-for-Less. "The effect of equitable estoppel is 'a license to use the invention
9 that extends throughout the life of the patent.'" *High Point Sarl v. Sprint Nextel*
10 *Corp.*, No. 2015-1298, at *11 (Fed. Cir. Apr. 5, 2016) (quoting *SCA Hygiene*
11 *Prods. Aktiebolag v. First Quality Baby Prods., LLC*, 807 F.3d 1311, 1332 (Fed.
12 Cir. 2015) (en banc)). Because PPI is licensed to use the '296 Patent, then the
13 doctrine of patent exhaustion bars Plaintiff's claims for infringement of the *same*
14 *patent* by the *same products*. *Quanta Computer, Inc. v. LG Electronics, Inc*., 553
15 U.S. 617, 621 (2008). Because PPI and Styles-for-Less are each accused of
16 infringement by the same patent for the same products, Plaintiff's claims against all
17 Defendants are estopped.

18 **C.  Plaintiff's Past Damages Are Barred By The Doctrine of Laches**

19 **1.  The Law Of the Doctrine of Laches**

20 "The Supreme Court has long recognized the defense of laches to a patent
21 infringement action brought in equity." *Aukerman*, 960 F.2d at 1028. Laches is
22 "defined as the neglect or delay in bringing suit to remedy an alleged wrong, which
23 taken together with lapse of time and other circumstances, causes prejudice to the
24 adverse party and operates as an equitable bar." *Id.* at 1028-1029. In September
25 2015, the Federal Circuit en banc confirmed that laches remains a defense to legal
26 relief in a patent case. *SCA Hygiene Prods. Aktiebolag v. First Quality Baby*

27
28

*Prods., LLC,* 807 F.3d 1311, 1315 (Fed. Cir. 2015) (en banc).[2] The Supreme Court has granted certiorari in that case.

Laches is an equitable defense to patent infringement that requires proof only by a preponderance of the evidence. *SCA Hygiene Products v. First Quality Baby Prods.,* 767 F. 3d 1339, 1343 (Fed. Cir. 2014). Laches exists based on "(a) the patentee's delay in bringing suit was unreasonable and inexcusable," and whether "(b) the alleged infringer suffered material prejudice attributable to the delay." *Aukerman,* 960 F.2d at 1028. If these factors are proven, laches bars all past damages prior to the suit being filed. *SCA Hygiene,* 807 F.3d at 1317; *Aukerman,* 960 F.2d at 1041.

## 2. Plaintiff's Delay In Bringing Suit Was Unreasonable and Inexcusable

"The period of delay begins at the time the patentee has actual or constructive knowledge of the defendant's potentially infringing activities." *Wanlass v. Gen. Elec. Co.,* 148 F.3d 1334, 1337 (Fed. Cir. 1998). Here, Plaintiff had *actual* knowledge of PPI's sales of purportedly infringing activities as early as the summer of 2010, (*See* Kroub Decl. Ex. D at p.15). On August 27, 2010, Plaintiff wrote to PPI and first threatened suit for infringement of the '296 Patent by the product accused in this case (*see* Sec. II.D; Kroub Decl. Ex. A). The current suit against PPI was commenced on January 19, 2016, when Plaintiff amended the complaint to add PPI as a defendant. (Kroub Decl. Ex. N). Accordingly, Plaintiff delayed suit against PPI for more than five years. Plaintiff's reasons for delay are inexcusable, for the reasons discussed above (*see supra* Sec. III.C).

Plaintiff also claims that only after commencing suit in October 2015 did it learn of the name PPI Apparel Group, Inc. (Kroub Decl. Ex. D at p. 15). That is

---

[2] Specifically, the Federal Circuit confirmed that laches remains a defense to legal relief in a patent case despite the United States Supreme Court's decision in *Petrella v. MetroGoldwyn-Mayer, Inc.,* 134 S. Ct. 1962 (2014), wherein the Supreme Court held that laches was not a defense to legal relief in a copyright case.

1 absolutely false. While the October 2014 lawsuit was pending, counsel for PPI
2 repeatedly told Plaintiff that PPI was indemnifying Charlotte Russe. (*See* Kroub
3 Decl. Exs. H and I). Separately, as discussed above, Plaintiff had previously
4 threatened Panties Plus with infringement in 2010, and publicly-available
5 information showed that, as of 2013, Panties Plus was doing business as PPI
6 Apparel Group (*See* Sec. II.D). In addition, Plaintiff's letter of September 22, 2014
7 to Charlotte Russe acknowledged that the Accused Products were manufactured by
8 Lady Princess Intimates—the same trademarked brand name of the products
9 Plaintiff's representative purchased in 2010. (Kroub Decl. Ex. E). A snapshot from
10 PPI's website in January 3, 2014 showed that "Lady Princess" was one of PPI's
11 brands. (Kroub Decl. Ex. R). Plaintiff cannot hide behind its own admitted lack of
12 diligence to justify its inexcusable delay.

13           **3.**    **PPI Will Suffer Material Prejudice Because of Plaintiff's**
14                 **Delay**

15      Economic prejudice exists where the accused infringers "will suffer the loss
16 of monetary investments or incur damages which likely would have been prevented
17 by earlier suit." *Aukerman*, 960 F.2d at 1033. Economic prejudice exists based on
18 "a *change* in the economic position of the alleged infringer during the period of
19 delay." *Id.* (emphasis in original). PPI has suffered material economic and
20 evidentiary prejudice for the same reasons discussed above in connection with
21 PPI's equitable estoppel defense. (*See* Sec. III.C.iii). Accordingly, to the extent
22 estoppel does not bar Plaintiff's claims in full, Plaintiff is barred from any pre-suit
23 damages from PPI due to laches.

24     **D.**    **The '296 Patent Is Invalid Under 35 U.S.C. §103**

25           **1.**    **The Law of Invalidity Under 35 U.S.C. §103**

26      A patent is invalid "if the differences between the subject matter sought to be
27 patented and the prior art are such that the subject matter as a whole would have
28 been obvious at the time the invention was made to a person having ordinary skill

1  in the art to which said subject matter pertains." 35 U.S.C. §103(a)(pre-AIA);
2  *Graham v. John Deere Co.*, 383 U.S. 1, 13-14 (1966). Obviousness is a question of
3  law based on underlying factual inquiries. The Supreme Court in *Graham v. John*
4  *Deere* stated that the obviousness analysis under §103 involves the following
5  factual inquires: 1) determining the scope and content of prior art; 2) ascertaining
6  the differences between the prior art and the claims at issue; 3) resolving the level
7  of ordinary skill in the pertinent art; and 4) secondary considerations of non-
8  obviousness. *Id.* At 17-18.

9  "[I]f a person of ordinary skill can implement a predictable variation, §103
10  likely bars its patentability." *KSR International Co. v. Teleflex Inc.*, 550 U.S. 398,
11  420 (2006). In evaluating whether the claims of a patent are obvious, courts should
12  be "mindful that '[t]he combination of familiar elements according to known
13  methods is likely to be obvious when it does no more than yield predictable
14  results.'" *Id.* at 416. There is no dispute that the purported invention of the '296
15  Patent is comprised of a "combination of familiar elements", and under *KSR,* no
16  reasonable jury could conclude that the invention was non-obvious. Accordingly,
17  the claims are invalid.

18  **2.      The Scope and Content of the Prior Art**

19  The prior art is voluminous in this case, and the purported invention is a
20  simple one. There are multiple references disclosing each element of the asserted
21  claims. The asserted claims are directed to backless, strapless bras with silicone
22  self-adhesive cups that also include a center connector. All of these elements were
23  admittedly well-known in the art.

24  In terms of prior art backless, strapless bras, U.S. Patent No. 6,231,424
25  ("Valentin") describes a strapless, backless bra, consisting of two cups with a center
26  connector and side tabs for securing the bra to the wearer. (Kroub Decl. Ex. Z)
27  Likewise, U.S. Patent No. 5,755,611 ("Noble") describes a backless, strapless bra
28  comprising two soft cups, which can be "pressed against the body" (Col. 2, line 53,

1 and thereby adhered to the body without the need for hooks and straps. In Noble,
2 the adhesive bra cups contain a renewer adhesive that allows the cups to be worn
3 several times. (Kroub Decl. Ex. AA at Abstract).

4       Silicone breast forms were also known. U.S. Patent No. 5,922,023
5 ("Mulligan") describes silicone "shell-like bodies" (Claim 1) in the form of a breast
6 prosthesis, wherein the cup is enclosed "within a synthetic resin film" (Claim 1)
7 and has a permanent adhesive on the inside, covering more or less of the inside of
8 the cup, which attaches to the skin and can be used repeatedly. (Kroub Decl. Ex.
9 BB). Likewise, U.S. Patent No. 6,200,195 ("Furuno") describes a silicone breast
10 pad, with permanent adhesive covering the inside of the pad, that is reusable and
11 washable. (Kroub Decl. Ex. CC). Additionally, U.S. Patent No. 4,553,550
12 ("Hattori") describes a breast covering in the form of a backless, strapless bra that
13 adheres to the skin of the wearer by a reusable pressure sensitive adhesive on the
14 inside of the breast covering, and can be small enough to only cover the nipple or
15 large enough to cover the entire breast. (Kroub Decl. Ex. DD).

16       Connectors of various types were also known for their use in bras to provide
17 a cleavage-enhancing effect. For example, U.S. Patent No. 5,538,502 ("Johnstone")
18 describes a garment used instead of surgical bandages shaped to conform to a
19 woman's body to keep the breasts together, and the center front closes with Velcro,
20 or a hook and loop fastener which gives the ability to adjust the garment tighter or
21 looser, thereby pushing the breasts together. (Kroub Decl. Ex. EE). Likewise, U.S.
22 Patent No. 2,882,905 ("Barg") describes a bra that consists of bra cups attached to
23 front panels, and the center front of the bra has an adjustable hook and eye tape.
24 (Kroub Decl. Ex. FF). Additionally, U.S. Patent No. 2,579,365 ("Conde") describes
25 two plastic breast forms, intended to enhance the appearance of the bust, that can be
26 inserted into bras or clothing or secured to the body, and included a connecter in the
27 center when the bra is used on its own. (Kroub Decl. Ex. GG). U.S. Patent No.
28 2,793,369 ("Panghini") describes a backless, strapless bra comprising two adhesive

1 acrylic resin cups that attach to the skin, and are joined in the center with an elastic
2 connector. (Kroub Decl. Ex. HH). U.S. Patent No. 3,196,878 ("Hedu") describes a
3 bra with two cups, a band attached to the sides of the cups that go around the torso
4 in back, and an adjustable center front connector in place between the two cups.
5 (Kroub Decl. Ex. II).

### 3. Non-Patent Prior Art References

7 Amoena, an intimate apparel brand first started selling attachable silicone
8 breast forms in 1992, and by 1998 was selling silicone breast forms with a pressure
9 sensitive adhesive layer. (Kroub Decl. Ex. U).

10

11 . (Kroub Decl. Ex. W; Chen Depo. Tr. at 196: 15-19).
12 Plaintiff itself also sold a product called "Bragel's Amazing Enhancer" or "Illusion"
13 ("Bragel's Illusions") which were a pair of silicone breast forms encased in
14 thermoplastic film material used to enhance a woman's bustline, as well as other
15 silicone breast forms containing a pressure sensitive adhesive. (Kroub Decl. Ex. V).

16

17

18 . (Kroub Decl. Ex. W; Chen Depo. Tr. at 53: 1-24; 137: 8-25; 140: 18-
19 25; 141: 1-20). Plaintiff's interrogatory responses are in accord.

### 4. The Differences Between The Prior Art and The Claims At Issue

22 As disclosed in the expert report of PPI's technical expert, the first element
23 of Claim 1: "a pair of breast forms, wherein each breast form comprises," is
24 disclosed in at least the following prior art references: Valentin, Noble, Hattori,
25 Amoena's Silicone Breast Forms with Adhesive, and Bragel's own prior art
26 silicone breast forms. (Karin Decl. Ex. OO at ¶76). The second element of Claim 1:
27 "a volume of silicone gel encased between thermoplastic film material," is
28 disclosed in at least the following prior art references: Mulligan, Amoena's Silicone

Breast Forms with Adhesive, and Bragel's own prior art silicone breast forms. (Karin Decl. Ex. OO at ¶77). The third element of Claim 1: "a concave interior surface facing towards a user's breast having a pressure sensitive adhesive layer for securing the breast form to the user's breast," is disclosed in at least the following references: Noble, Mulligan, Hattori, Furuno, Amoena's Silicone Breast Forms with Adhesive, and Bragel's own prior art silicone breast forms. (Karin Decl. Ex. OO at ¶78). The fourth, and last element of Claim 1: "a connector adapted to adjoin the breast forms together, wherein the connector is positioned between inner sides of each of the breast forms," is disclosed in at least the following references: Valentin, Noble, Barg, Conde, Panighini, and Hedu. (Karin Decl. Ex. OO at ¶79).

In particular, Noble discloses each feature of Claim 1, except for the use of a silicone gel for the bra cup. (Karin Decl. Ex. OO at ¶86). During prosecution of one of the '296 Patent's predecessor patents the examiner argued that Noble alone anticipated Plaintiff's invention and taught each and every element of the pending claim. (Karin Decl. Ex. OO at ¶54). Plaintiff responded that Noble did not anticipate since it did not disclose a "volume of silicone gel encased between thermoplastic film material." (Karin Decl. Ex. OO at ¶54; Kroub Decl., Ex. Y). It would have been obvious, however, to combine Noble with a known silicone containing silicone breast form, to create a self-adhesive silicone backless strapless bra with a center connector. (Karin Decl. Ex. OO at ¶86). Using silicone for the cups in Noble would have been obvious, particularly in light of the teachings in Hattori, which suggested that a breast form containing a pressure sensitive adhesive layer could be constructed of soft and natural-feeling materials, in order to obtain a bra that feels very similar to breast tissue. (*Id.*).

Noble, as well as other references, discloses a connector that meets the elements of dependent Claims 2 and 5, and the combination of Noble and silicone breast forms disclosed in many of the prior art references would render claims 2 and 5 obvious. (*Id.* ¶87).

1       Alternatively, just as the inventors did, it would have also been obvious to
2 combine known silicone breast forms containing a pressure sensitive adhesive
3 layer, such as those sold by Amoena or Bragel itself, or as disclosed in Furuno, and
4 then add known center connectors as disclosed in prior art references such as Hedu
5 and Valentin to create a self-adhesive silicone backless, strapless bra with a center
6 connector. (*Id.* at ¶88)

7       References such as Hedu, Panghini, Johnstone and Barg describe the center
8 connectors of a bra being used to hold breasts together in a desired position,
9 whether it be for more support or more cleavage. (*Id.* at ¶89) Center connectors
10 were well-known in the art for many decades, and were a known and necessary
11 element of bras that allowed the wearer to control the amount of cleavage. (*Id.*).
12 These references contain a connector that meets the elements of claims 2 and 5, and
13 therefore, combining these references with the references disclosing silicone breast
14 forms would render claims 2 and 5 obvious. (*Id.* at ¶90).

15       **5.**    **Resolving the Level of Ordinary Skill in the Pertinent Art**

16       The validity of the '296 Patent is analyzed from the perspective of one of
17 ordinary skill in the art from May 31, 2002 (the patent's priority date), the filing
18 date of U.S. Patent No. 6,758,729, the parent of the '296 patent. A person of
19 ordinary skill in the art "would have knowledge and at least one year's experience
20 in the design, manufacture, and evolution over time of women's brassieres." (Karin
21 Decl. Ex. OO at ¶16). Plaintiff has taken the position that one of skill in the art "has
22 at least 7-10 years of experience in designing apparel, including bras and other
23 intimate apparel or 4-5 years of experience in developing intimate apparel plus a
24 mechanical or chemical engineering degree." (Kroub Decl. Ex. D at p.12, Response
25 to Interrogatory No. 6). Plaintiff's definition, however, is "unnecessarily restrictive
26 and inconsistent with the straightforward, commonplace nature of the technology as
27 used in the intimate apparel field at issue in this case, and the broad nature of the
28 '296 Patent claims." (Karin Decl. Ex. OO at ¶17).

1                                            ".

2 (Kroub Decl. Ex. W, Chen Depo. Tr. at 307: 20-24)

3      To a person of skill in the art, it would have been obvious to combine a

4 known backless, strapless bra containing a connector such as Noble, with a volume

5 of silicone gel as disclosed in each of Furuno, Amoena, or Bragel's own products.

6 (Karin Decl. Ex. OO at ¶85). Or to start with a pair of self-adhesive silicone breast

7 forms, and add a connector, as disclosed in Noble and other prior art references. (*Id.*

8 at ¶89).

9           **6.**   **Secondary Considerations of Non-Obviousness**

10      In addition to the aforementioned factual inquires, evidence that is referred to

11 as "secondary considerations" must be considered. These considerations include

12 commercial success, long felt but unsolved needs, and the failure of others to

13 invent. *Graham v. John Deere Co.*, 383 U.S. 1, 17-18 (1966).

14      Plaintiff has stated that the breast form system covered by the patent-in-suit

15 has enjoyed "incredible commercial success." (Kroub Decl. Ex D at p.7). Plaintiff

16 submitted a "Commercial Success Declaration" to the USPTO on March 25, 2004,

17 after the USPTO repeatedly rejected the a pre predecessor to the '296 Patent over

18 the prior art to the '296 Patent (Kroub Decl. Ex. JJ; Ex. W, Chen Depo. Tr. at 274:

19 3-6).

20

21

22                                        ). (Kroub Decl. Ex. W,

23 Chen Depo. Tr. at 274: 17-20).

24

25          . (*Id.* Chen Depo. Tr. at 276: 1-8).

26                 . (*Id.* Chen Depo. Tr. at 277: 11-22).

27

28

1  ████████████████████████████. (*Id.* Chen Depo. Tr. at 274: 19-25; 277:

2  23-25; 278: 1-25; 278: 1-11). ██████████████████████████

3  ████████████████████████. (*Id.* Chen Depo. Tr. at 108: 17-

4  25; 109: 1-23). █████████████████████████████████

5  ████████████████████████. (*Id.* Chen Depo. Tr. at 113: 3-25; 114:

6  1-5). ███████████████████████████████████████

7  █████████████████████████████████████████████

8  ████. (*Id.* Chen Depo. Tr. at 114:1-11; 116: 10-15; 117: 1-10). ████

9  █████████████████████████████████████████████

10  ████████████████. (*Id.* Chen Depo. Tr. at 124: 21-25; 125: 1-12).

11  Plaintiff has also suggested that copying by others and long-felt need are

12  additional relevant secondary considerations. (Kroub Decl. Ex. D). But copying by

13  others is not enough on its own to find that the patent is non-obvious, since "more

14  than the mere fact of copying by an accused infringer is needed to make that action

15  significant to a determination of the obviousness issue." *In re GPAC, Inc.*, 57 F.3d

16  1573, 1580 (Fed. Cir. 1995) (quoting *Cable Elec. Prods. v. Genmark, Inc.*, 770 F.2d

17  1015, 1028 (Fed. Cir. 1985)). And Plaintiff's conclusory, unsupported allegations

18  of long-felt need are not enough to overcome the prima facie case of obviousness

19  present here. Especially in light of the fact that women had long had other solutions

20  available to them when wearing low-cut dresses.

21  **7.    Each Asserted Claim of The '296 Patent is Invalid As**

22  **Obvious Under 35 U.S.C. §103**

23  The '296 patent has a priority date of May 31, 2002. Based on the *Graham*

24  factors, one of skill in the art at the time would have easily combined a known

25  backless, strapless bra containinng a connector such as Noble, with a volume of

26  silicone gel as disclosed in each of Furuno, Amoena, or Bragel's breast forms.

27  (Karin Decl. Ex. OO at ¶93). A combination of these prior art references would

28  render obvious Claims 1, 2, and 5 of the '296 Patent.

1       Although the prior art at the time did not include a product that included all

2 of the elements present in the '296 patent, each missing element was well known in

3 the art of bra construction and products designed to enhance the appearance of a

4 woman's breasts, and one of skill in the art would have easily looked at the various

5 references and combined those to arrive at the invention claimed in the '296 Patent.

6 (*Id.*).

7       Since the objective considerations of nonobviousness presented in this case,

8 including, evidence of commercial success, are legally insufficient, Plaintiff will be

9 unable to overcome the prima facie showing of obviousness as set forth above

10          **8.    The '296 Patent Is Invalid Under 35 U.S.C. §102(f)**

11       A patent that names the wrong inventors is invalid. 35 U.S.C. §102(f). The

12 '296 Patent lists three co-inventors. Only those persons who contribute to the

13 conception of the claimed invention are properly named as inventors. *See*

14 *Burroughs Wellcome v. Barr Labs., Inc.* 40 F. 3d 1223, 1227-1228 (Fed. Cir. 1994)

15 ("conception is the touchstone of inventorship.") Here, Plaintiff admitted that Alice

16 Chang is the only person who actually conceived of the purported invention, i.e. the

17 addition of a "connector" to existing adhesive silicone breast forms. (Kroub Decl.

18 Ex. D at p.6, Response to Interrogatory No. 2) ("

19

20                .")(Kroub Decl. Ex. W, Chen Depo. Tr. at 53: 18-

21 21). The other purported inventors, David Chen and Jasper Chang, did not

22 contribute to the purported invention, only to reducing it to practice. (Kroub Decl.

23 Ex. D at p. 6, Response to Interrogatory No. 2)("Jasper and David began working

24 on reducing this concept to practice and eventually created a working prototype.").

25 Chen and Jasper Chang are therefore not properly named as inventors. *See Pro-*

26 *Mold Tool Co. v. Great Lakes Plastics*, 75 F. 3d 1568, 1575 (Fed. Cir. 1996).

27

28       . (Kroub Decl. Ex. W, Chen Depo. Tr. at 182: 12-14).

BUCHALTER NEMER
A PROFESSIONAL CORPORATION
LOS ANGELES
BN 21426321V1        22
MOTION FOR SUMMARY JUDGMENT        Case No. 8:15-cv-01756-R (FFMx)

1
2
3          . (*Id.* Chen Depo. Tr. at 183: 14-25; 184: 10-25; 185: 1-25;

4  186: 1-25). However, the '296 Patent is a "product" patent, rather than a

5  "manufacturing" patent. Accordingly, the '296 Patent is invalid under 35 U.S.C.

6  §102(f).

7  **IV.    CONCLUSION**

8        For the foregoing reasons, Defendants motion should be granted.

9

10  DATED:  August 9, 2016                BUCHALTER NEMER
                                          A Professional Corporation
11

12                                   By: _____ /s/ Matthew L. Seror

13                                          MATTHEW L. SEROR
14                                       Attorneys for Defendants and
                                            Cross-Complainants
15                                       STYLES FOR LESS, INC. and
16                                       PPI APPAREL GROUP, INC.

17
18
19
20
21
22
23
24
25
26
27
28